All rise. The United States Court of Appeals to the Federal Circuit is now open and in session. God save the United States and His Honorable Court. Please be seated. Our first piece of business this morning is an attorney admission to our bar. I have the privilege of making the motion myself, so for purposes of its decision I turn it over to Presiding Judge Toronto to confer with Judge Chen and decide whether my motion shall be granted. I move the admission of Daniel C. Tucker, who is a member of the bar and is in good standing with the highest court of Virginia. I have knowledge of his credentials and am satisfied he possesses the necessary qualifications. Dan has served admirably as my law clerk for the last 18 months and next week will be his last week with me and I'm tremendously sad. He has served me with great distinction. He's worked incredibly hard. He is incredibly brilliant in the technology and law and he's really contributed to the work of our chambers in a way that will be difficult to replace. I wish I could keep him longer, but I know that when you become a member of our bar, assuming my motion is granted, that you will do good things and bring good work product to our court and thereby improve the whole process that we are all involved in. I move for his admission. We will grant the motion and I have some first-hand knowledge and much second-hand knowledge to confirm everything that was just said and we look forward to seeing you here in a lawyer role. Welcome. Okay, our first case for today is 2014-7017 Wingard v. McDonald. Can you tell me how to say your name? Is it Wes? Weshey, Your Honor. Mr. Weshey, please proceed. May it please the court. VA granted Mr. Wingard's claim for disability compensation in Chapter 11, Title 38, United States Code, but during his lifetime paid him absolutely no compensation. VA then denied Ms. Wingard's claim for the burial benefits under Section 2302 because VA did not pay to Mr. Wingard the compensation he was granted during his lifetime. The VA's decision in this matter was based on its misinterpretation of Section 1110-1131 of the United States Code, Title 38, when it found in effect or interpreted these statutes to, in effect, allow the VA to grant disability compensation and then pay to that veteran who was granted that compensation, nothing. How is it that we are entitled to even reach that question? Another jurisdictional question, Your Honor. Is that correct? Indeed, yeah. Which, at least under one view, could have two aspects. Was the Veterans Court wrong in reaching the merits of that question? Did it lack jurisdiction? And second, even if it lacked jurisdiction, don't we lack jurisdiction? This Court has independent jurisdiction to review the interpretation of law upon which the Veterans Court relied upon under 7292A. So even assuming, without conceding, that the Veterans Court was not able to review the schedule, which I would argue and Ms. Wingard argues they did not do, then this Court independently still has the ability to review the Veterans Court's interpretation of that statute. But as the Veterans Court held, it was careful not to review the schedule. Rather, what the Veterans Court did was look at Ms. Wingard's challenge, which was whether or not Section 1110-1131 permitted VA to grant compensation but deny benefits. It's a strict interpretation of the statutory provisions. How is it that the argument that the statute does not allow for 11 levels in the schedule, not within the bar on the Veterans Court's review of the schedule for, not interpretation of the schedule, but rather of the schedule for compliance with the statute? Ms. Wingard's argument may have been a little inarticulate blow or inartful, but her argument was essentially that Section 2302, upon which the language of requiring a payment of compensation for her to be entitled to her benefits, was a challenge to VA's non-payment to Mr. Wingard during his lifetime because Mr. Wingard was granted a 0% rating for his engineal hernia. That 0% rating was, in fact, the basis upon which VA denied the payment that Ms. Wingard required in her claim to be successful. The challenge, however, inarticulate may have been below was not necessarily to the challenge of the existence of the 0% rating per se, as much as it was to VA's interpretation of the regulation, or the statutes rather, to permit the VA to not pay the compensation that VA granted under Chapter 11 benefits, Section 1110-1131. In fact, the Disability Compensation Scheme, which was created by Congress to provide compensation to recompense veterans who have disabilities characterized as a disease or an injury with some impairment of earning capacity, as the court held in the case of Davis, is not just a disease or injury. It is a disease or injury plus impairment of earning capacity, unlike Chapter 17, which is a disability defined by statute to be just a disease or injury that causes some residual physical and mental disability. The challenge is directly to the ability of the VA to have a 0% rating. Everything else you're arguing, which is whether or not it is proper for them to conclude in this factual scenario that he should have received a 0% rating by virtue of the fact that he did have impaired earning capacity, that's all application of law to facts in this case. That isn't, it seems to me, a legal question. I'm having a little trouble understanding how we would have jurisdiction over the argument you just presented, which as I understood it was, that you think it was erroneous for them to conclude in light of his diminished earning capacity that he was nonetheless appropriately classified as a 0%. Your Honor, the argument we carefully crafted is that VA interpreted the statutory scheme to permit it to grant a 0% rating. In effect, as it's done in the regulations, but more importantly to deny the compensation that it had granted in Mr. Wingard's claim, he was granted disability compensation. There is no disputed fact of that. Then it assigned a 0% rating. That 0% rating was the key that prevented the payment. However, because they granted the disability compensation, VA had to have found that there was at least a disability of some form, a disease or injury, plus some impairment of earning capacity. That impairment of earning capacity is really what we have here that the Congress intended to recompense. Therefore, if the claim was granted under 1110 or 1131, statutory language being essentially identical, then there had to have been a payment of compensation during his lifetime, which VA did not pay, which had the effect of denying Mr. Wingard's claim because of that lack of payment. How is what you just said any different from saying that as a statutory matter, 0% rating is BART? It's not a – well, to be careful, Your Honor, the focus again is really on the nonpayment of compensation. If there is a nonpayment of compensation, even though it was granted, then Ms. Wingard and her challenge can never be successful because that 2302 claim that she filed required that her father, Mr. Wingard, be in receipt of compensation. But for VA's misinterpretation of the statutory provisions that allowed it to not pay, in whatever form it chose not to pay, it chose in this case to grant a 0% rating, but it could have just as easily done anything else and not paid. And the result for Ms. Wingard would have been identical. So Ms. Wingard's challenge or Ms. Wingard's argument is that because VA did grant the disability compensation, that there was an impairment of earning capacity found as a factual matter, then he was entitled to that payment, which he did not receive. And that violates express language of Section 1110, 1131 that the United States will pay compensation to veterans with a service-connected disability. And that language is plain. Let's assume for the moment that our power to review the rating schedule is consistent with the veteran court's power to review the rating schedule. Then why is it that we can hear this question here, your challenge to the rating schedule? Assuming this court does not have the power to review the contents of the rating schedule, and I believe the case of Sellers has held that, then this court obviously does not have that power. However, the challenge is not to the contents, like in the Wanner case. The veterans court went in and rewrote the schedule. They went in and took a requirement for a particular rating out of the schedule and said that's proper. This court said that that was improper because it was going in under 70 foot 252B and rewriting the criteria necessary for a particular rating for tinnitus. This court is not doing that in this case, and I'm not asking this court to do this in this case. What Ms. Wingard is challenging and asking this court to do is to enforce the requirements of statute that if VA is going to grant compensation, that it will pay compensation. There's no challenge to the percentages assigned to a particular disability. Where did the VA, you keep saying it's undisputed that the VA agreed that he is entitled to disability compensation. Where did they hold that? Because in the record, like at 827, it says they found a disability, but that he is not entitled to compensation. So where did they find, which you kept saying repeatedly, where is it undisputed in this record that they determined he was entitled, not that he had a disability, but was entitled to compensation? On the next page, Your Honor, on chronicle page 29, at the very top, the type of disability rating. Our type of rating is DIS for disability. And then down the middle there, next to the 7338, service connection for the particular disability, 0% from that particular date. The only claim... This is saying that they found he does have a service-connected disability. This is not saying that he is entitled to compensation for that disability. The VA decision here on page 27 says that we cannot grant your claim for payment of disability benefits. And the basis of that was because it was less than 10% disabled. The claim he made was for disability compensation under chapter 11. He has made no other claims. There are no other claims in the record. Yes, and I don't see in this record anything that establishes what you keep saying to us, which is it's undisputed in this record that the VA decided he was entitled to disability compensation. I only see in this record that they decided he had a service-connected disability, but that that disability didn't warrant compensation. Had VA not granted the claim, they would have expressly denied the claim as having not been established. They would have said your claim is denied. It's entirely possible, isn't it, that you could be disabled by virtue of a service-connected accident. You could have a disability, but it doesn't impair you really in any aspect of your life such that it isn't something that is going to preclude you from continuing to work in the kind of employment you've had, having the kind of marriage you have, the family you have, the social things you like to do. Isn't it possible that you could actually suffer some form of disability in the military that doesn't impair you in any way? Yes, Your Honor, it is possible for there to be a service-connected disability that does not rise to the level of entitlement for Chapter 11 compensation. That would be the type of disability contemplated under Chapter 17. But in this context, the only claim being made, and for which he was denied payment for, was a disability compensation claim. And I would submit that that was, in effect, a grant, and that was not disputed in the court below. I'd like to reserve the remainder of my time, if I may. Thank you. Mr. Hockey? May it please the Court. Scars comes to mind. You can have a scar, and it may not affect at all your ability to be gainfully employed, but it would be service-connected because it happened as a result of an event in service. So there are a lot of things that could be service-connected that don't affect one's ability to be gainfully employed, which is what the compensation repayment structure is all about. But to start with, this Court doesn't have jurisdiction over this case, as we explained in our brief and in our follow-up letter brief. I'm sorry, this Court doesn't have jurisdiction? This Court does not have jurisdiction. We don't have jurisdiction even to say that the Veterans Court was incorrect in asserting jurisdiction? You do have jurisdiction to say that, to make a jurisdictional finding, to find that the Veterans Court was without jurisdiction. And the letter brief requested of us, the parties, whether or not the Court could look at the rating schedule in any event, notwithstanding the Veterans Court's lack of authority. And I think, as we indicated in there, there was a change to the statute, the applicable statute, 502, Title 38, in 2008, which allows this Court now to look at the rating schedule, but it can only do so as part of a rulemaking challenge under 502, and this case is not that. Pursuant to a petition, right? Pursuant to a petition for rulemaking. So could Ms. Wingard today file a petition to the VA, assuming it gets denied, then file an action here under 502? Yes, as we explained in our brief, she could approach the VA with a suggestion that the rating schedule is wrong and that it should be corrected to eliminate 0% ratings, and the VA would respond to that. And when the VA responds to that, she would have 60 days pursuant to this Court's Rule 4712 to file a challenge to the VA's response. Is there any kind of obligation on the part of the VA to respond to such a petition? Well, I don't know. I can't give you, Your Honor, a statutory or regulatory site. I know that they have. I know there are two cases pending before this Court right now premised on requests for changes to the regulation or to other regulations, and the VA responded in both of those cases. So I think the VA would like to respond when asked. Who do they file the petition to? Is it to the Secretary? I think they would go to the Secretary and file a request for rulemaking. I think there's actually some language in a regulation somewhere that kind of spells that out a little bit. One thing that is clear is that you're clearly correct under the statutory language. The amendment to Section 502 in 2008 does make it clear that Congress intended for APA challenges to be able to be appealed to us and not to the Veterans Corps, but to us. But one thing I'm struggling with is parsing the language in 7292. I'm having trouble making sense of that language. I mean, you're going to point me to the Senate report, but I'm not a gal that loves legislative history, so I'd like to find some plain meaning of that language that can comport with what you're suggesting, which is that language doesn't also open a door for us in 7292. Well, Chapter 72, which is part of Section 402 of the Veterans Digital Review Act, as opposed to Section 502 of the Veterans Digital Review Act, which deals with the APA review, sets out the framework by which a claimant goes through the process and goes from the regional office to the board, to the Veterans Corps, to this court. So 72 is all about the jurisdiction this court has over Veterans Corps decisions, and we have to start then at the lower level of the ladder. And 7252 prohibits the Veterans Court from even looking at the rating schedule. That's clear. So when it comes to this court, under those provisions, under this court's jurisdictional authority, pursuant to Chapter 72 or Section 402 of the VGRA, the language says this court won't second-guess the Veterans Court's refusal to review the rating schedule, implying that Veterans Court would normally refuse to review the rating schedule, and then this court wouldn't come in and mess with that decision. So therefore, there wouldn't be an issue about review of the rating schedule ever presented to this court if the Veterans Court's doing its duty. Well, but isn't... I think I understand what you're saying, but maybe you'll need to say it again just to make sure I understand it. But I guess because the other... What it seems that we can't review is a refusal by the Veterans Court to address what they're clearly prohibited from addressing. That doesn't mean we can't review the rating schedule as a question of law. Like any other rule or regulation, that's what's troubling me about this language, is it seems to say we can't fault the Veterans Court, we can't review when they say they are or are not going to reach this issue, but it doesn't... It certainly should have... Don't you think it could have been written more clearly? I think it was written with the assumption that 7252 comes first. Well, it does come first, but wait, are you predicating your view on the notion that we can't review anything that the Veterans Court can't review? Because you know there are lots of cases where that's not actually true. But an issue that can't even be presented to the Veterans Court. Yeah, okay, but constitutional issues. The Veterans Court thinks they can review constitutional issues. Okay, whatever, but you know, they may think that. But it is certainly the case that in many Article I tribunals, administrative agencies, they are prohibited from reviewing constitutional challenges at all, which means they go through the rigmarole of deciding the whole case on the merits, sort of turning a blind eye to the constitutional challenge weighing heavily in the case, and only when that case gets to us, the PTO challenges are a prime example, is the first instance in which the constitutionality issue can be addressed. I mean that seems a little bit wasteful, but nonetheless that is the process. So certainly there exist some instances where Article III tribunals are given exclusive jurisdiction to consider an issue that may be prevalent from start to finish. I'm going to give you the statutory scheme response to this one, which is now looking at 502. So we have the two ways someone can complain or challenge an action of the secretary, either in a sort of case level through Chapter 72 or through a general attack on a regulation under APA rulemaking provisions, which Congress has vested with this court under 502. And up until 2008, or more precisely at the time the Dutch Judicial Review Act is passed, the language prohibiting this court from reviewing the rating schedule exists in 502. So it would make no sense for Congress to say in 1988, Veterans Court, you can't review the rating schedule. Federal Circuit, you can't review it in the context of a rulemaking challenge. But notwithstanding the Veterans Court's prohibition against rulemaking, reviewing the rating schedule, the Federal Circuit can then look at it under some other view. That's sort of my question to you, which is, what precluded us from doing it in a case-by-case basis before this amendment? Because if this language, other than a refusal to review the rating schedule, was not part of the code, and if we were prohibited from doing it in the context of a 502 review, it is clearly a rule of law. The rating schedule is a rule of law, a rule of regulation. It's one of those things. So what precluded us prior to this enactment from reviewing it as part of a 7292 inquiry? I think you're still precluded from reviewing it as part of a 7292 inquiry. I understand you think so. But the reason you think so is because Congress clearly put it in 502, and because they added a language that said other than a refusal. That language wasn't there in 88. Both of these amendments were simultaneous, right? No. This language, other than a refusal, was in 1988. That was part of the VGRA. That was already there. So that wasn't part of the amendment. No. What the amendment did in 2008, the Clarification Act, removed the similar language from 502. Got it. And the legislative history explains, which is actually consistent with the legislative history of B08, which this Court in Wanner discusses somewhat, that the idea here is Congress is saying the rating schedule, if you're going to allow sort of piecemeal challenges to the rating schedule through the Chapter 72 provisions, in other words, each individual claimant can make an argument about why this particular diagnostic code is wrong or that particular diagnostic code is wrong. That would lead to a nightmare in trying to run the VA program. You'd constantly be having to revise the rating schedule for every individual case, going back and changing it for all the affected veterans who might be benefiting or not benefiting from the particular diagnostic code as it was or was not interpreted. So what Congress said, basically initially in 1988, was we're not going to mess with this and we're not going to let the courts mess with it. But in 2008, as part of the Clarification Act, they said, well, we recognize that there is a possibility that we shouldn't insulate it completely from judicial review. So what we will do is allow these facial challenges, which ideally will be broader and brushed. They will actually invite the service organizations and other folks of interest. Just to make sure I'm clear on the facts, you're saying 7292 has this other than a refusal to review the schedule of ratings language in it. It was not added in 1988 or 2008. No, I believe that this 7292 is not... The only thing that was changed in 2008 was... 502. And it was changed by removing this type of language, not adding it. In 502, as part of the VJRA, that kind of similar language of not reviewing the rating schedule was included in 502. Can I ask you this? You described how unsettling it would be if each veteran in his own appeal on benefits could challenge particular aspects of the schedule. Suppose one said that there was a line between challenges of schedule provisions as contrary to law versus challenges under all the other usual APA grounds, arbitrary and capricious, lacking in substantial evidence. Given that there aren't that many statutory prescriptions on the schedule, would it really be problematic as a practical matter to read this prohibition as not covering essentially pure statutory challenges to the schedule? As I think we indicated in our letter brief, APA challenges typically involve... The first question is, is the regulation consistent with its authorizing statute? Which is exactly the challenge here. The challenge is that the inclusion of a 0% rating in the rating schedule is inconsistent with 1155. My question is, how many such even plausible challenges could there be? As opposed to medical science now tells you that this set of criteria you have for this particular work impairment rating would not be a statutory thing. It would be an arbitrary capriciousness or lack of substantial evidence. I don't know, Your Honor. I can say that 1155 doesn't require a whole lot. It requires 10 levels for compensation payment purposes. So as far as challenges to trying to follow that guidance, there may not be that many. But as we see in this case, what's being argued is what the VA did in creating the schedule. The argument is that it's inconsistent with 1155, and as the merits portion of our brief demonstrates, no, it's not. It's not inconsistent. So it's difficult for me to say or predict how many similar types of challenges that don't have a strong hook in an existing statute could be made. There could be many that don't have the hook but might have sort of the flavor of, well, it's inconsistent because it doesn't feel right. Am I remembering right that the Wanner case involved, among other things, a statutory challenge? 1110, similar to this one. The argument was that the particular diagnostic code was inconsistent with 1110. Let me put a final point on it. What if the rating schedule, instead of by 10% increments, went by 5% increments? 5%, 10%, 15%, 20%, all the way up to 95% and then 100%. So instead of having 10 rating levels, which is required, and no more than 10 levels is required by the statute, we're now looking at a rating schedule with 20 levels. I think, would you agree that that's contrary to the statute? I would think that would look to be inconsistent with the statute. Okay, so that sounds like now... that would be an example of the VA, through its rulemaking, having gone beyond its statutory authority, far beyond its statutory authority. And that sounds like something that there should be judicial review for. And prior to 2008, there wasn't. And prior to 1988, there was no judicial review over VA. And why is it that before 2008, we were all living in a world where the VA could do whatever it wants, whenever it wants, with a rating schedule, and that goes far beyond its statutory authority? I would refer you to Congress. Prior to 1988, there was no judicial review over Board of Veterans' Appeals decisions. In 1988, Congress, after a long period of time, hashed out how they would go about... Let's go to 2007. So in 2007, after... Well, let's take the step from... In 1988, Congress says, we need to provide these veterans with some judicial review for them, some option. And so that's what they did in 1980. But they drew the line at the rating schedule. And in 2007, that line continued to exist with respect to the rating schedule. In 2008, they said, we're going to loosen up review for the rating schedule, but limit it to 502 challenges before the Federal Circuit. I understand your narrative. I'm just trying to understand maybe what's the best narrative. And in light of the fact of our case law, which I see our case law is creating two buckets. One bucket is when it comes to figuring out whether the VA has arrived at a reasonable, plausible, defensible interpretation of its own terms that's used in the rating schedule. We in the Veterans Court are free to look at that. I think you would agree with that. Then the next category is, well, when it comes to challenges as to the choices that are being made by the VA in creating and establishing a given diagnostic code, well, that's something that neither we nor the Veterans Court will look at. I think that's another bucket of cases from this Court. Then what we have here in front of us is a third category where I don't think this Court has really answered the question. What happens when the VA establishes something in a rating schedule that is beyond its statutory authority? It doesn't have the authority, the power, to do what it did in the rating schedule. To me, that is a different question than the two buckets that we've looked at already. The answer is, if Congress gives the VA the authority to create a rating schedule and says, we want 10 levels, but then fails to provide any mechanism for judicial review for that rating schedule, then Congress has authorized the action of the Secretary. Congress can go in and change it. Someone can go to Congress and say, they've got 20 ratings here, or 20 levels, and they're only supposed to have 10. Or, now, under 502, after the Clarification Act of 2008, someone can come and petition the Secretary and say, you've got 20 levels, you need to fix that. And if the Secretary doesn't fix it, they can bring it before this Court. Does your position all boil down to what the second sentence of 7252B says? Veterans Court may not review the schedule of ratings for disabilities. Is that what it comes down to? It's a combination of that, then the language in 7292, which says this Court can't second-guess that, and the language in 502, which says, and for purposes of this case, after 2008, this Court can look at this issue under a 502 challenge, but the last sentence of 502 makes it clear that it cannot look at it as part of a Chapter 72 challenge because, to the extent it arises as part of a Chapter 72 challenge, Chapter 72 provisions or procedures apply, which takes you right back to the block that 7252B raises. Okay, Mr. Hockey, you've exceeded your time. Mr. Wesche, you have three minutes left, almost four minutes left. If you need a little extra, you're welcome to take it so we can balance out the time. Your Honor, to address your point, Judge Moore, about where in the record it says that disability compensation was granted, the point to be made here is that there is no such thing as a claim for service connection. It is a misnomer that is well spread throughout the VA system. There's a claim for disability compensation. A way to prove disability compensation, or many of the other benefits, is for that disability to be service-connected. So service-connected is a term of art to describe what that disability is in the context of that particular statutory scheme. So here, where Mr. Wingard was granted a 0% rating, VA had to have granted as a matter of law, as a matter of what happened, that they found an impairment of learning capacity and they found that his claim could be granted. The 0% rating itself is a downstream issue. We don't get to the question of rating until we get to the question of whether or not there's something to rate, and that would be a service-connected disability. Am I wrong? I mean, I'm by no means an expert in any of this veteran stuff, but when it is deemed to be a service-connected disability, doesn't it also open up certain medical compensation avenues for a veteran that would not otherwise be available? Meaning that even if it doesn't impair work or earning or anything else, maybe there are issues where he would need to seek medical treatment because he does have a disability, even if it isn't one that disables him and therefore warrants compensation in terms of actual money each month, but wouldn't a determination that he has such a disability entitle him to greater medical coverage than he would otherwise have? It can, Your Honor, but the Gannon under Chapter 17, specifically to your question, has a lower threshold for what a disability is for Chapter 17 purposes as opposed to Chapter 11 purposes. Chapter 17 by definition, I believe it's Section 1701, says that a disability is defined as a disease or injury that has a physical or mental disability. It doesn't have anything in there about an impairment of earning capacity. This Court and the Veterans Court in a case called Allen and Section 4.1 of the regulations describes that for Chapter 11 purposes, disability is a disease or injury of the physical or mental body, plus some impairment of earning capacity. So if there's a grant of Chapter 17 benefits, there's not an ancillary grant of Chapter 11 benefits, but if there's a Chapter 11 benefit, there is potential entitlement to Chapter 17 benefits should that veteran decide to go ahead and make that claim. In Mr. Wingard's case, or the appendix of 27, they actually say he does have the entitlement, but he needs to go out and apply for it still. So they didn't just automatically grant him the health care benefits, and that's pretty typical in the system. With regard to this Court's jurisdiction, the case of Nygold I think is instructive, where the Court said that the Court needs to have clear evidence of intent of Congress to restrict the jurisdiction of that Court. Here there is no clear evidence. Why? Why are we not just bound by Wanner? Why is this even an issue that is open to us? In Wanner, the Court concluded, and it actually cited the exact language in 7292, about refusal, other than a refusal to review, and concluded that no judicial review was available for any challenge to the rating. So if our Court in Wanner said that, and if 7292 wasn't modified, the only question left open for us, we're bound by Wanner, the only question left open for us is, did what Congress do in 502 change the state of how we should apply 7292? Because we're bound by what we said the language in 7292 meant in Wanner. So I don't see, I guess in light of that, I don't see how this, if your jurisdiction argument is the way the government characterized it, if your claim argument is the way they do, I don't see how you can get around Wanner. Well, Wanner itself is distinguishable on the facts, because in that case, the Veterans Court actually went in and took its little red pencil and rewrote the schedule. I don't think it's distinguishable on the facts that two veterans had different names. I mean, the question is, is there a distinction vis-à-vis the holding that the court reached, which clearly is predicated on no judicial review of anything related to ratings? Well, certainly, when the regulation was, I'm sorry, when 502 was changed with 7292, it did open the door, I believe, and I would posit that for this court to go ahead and do those kinds of challenges, as Judge Chen had suggested there, we do have a situation here where the Congress apparently was concerned that there would be absolutely no judicial review of any kind of enactment, and that... The kind of challenge Judge Chen was suggesting is when the VA enacts a rating schedule that is otherwise clearly contrary to law, contrary to their authorizing statute. And what our court said in Wanner is the Veterans Court statement in Volano that it may review whether a particular code is contrary to law, Cites only the 38 U.S.C. 7252b. The language of 7252b, however, removes Veterans Court jurisdiction over all reviews involving content of rating schedules and the Secretary's action in adopting them. And so it goes on to say, even though we recognize a unique exception in our case when it's a constitutional challenge, it seems to me it has clearly rejected the idea that there is a different treatment that ought to be accorded to an argument related to contrary to law than other kinds of challenges of the rating schedule. When Congress authorized this court to review the schedule under 502, and by extension 7292 in the third sentence of 502, it opened the door for exactly those kinds of challenges that the Veterans Court could not do. Otherwise, with that language still existing in 502, this court could not, nor could the lower court, review any challenges to the schedule. Any challenges to the schedule in any form would be limited constitutional challenges, and the only court in the land that I perceive will be able to look at that would be the Supreme Court of the United States. That said, when Congress opened up the door to judicial review... Under 502. I'm sorry? Under 502, right? I was actually thinking more in 1988 under the VGRA. Okay. But under 502, the intent of Congress was to provide for a higher level of judicial review that had previously precluded. Again, we're looking at the intent of Congress to provide something, judicial review at this court, that had previously been forbidden by statute. Do you have a final thought? I think we should wrap it up. I would be honored. For these very reasons, and for the reasons in my brief, I think the court should reverse the decision of the Veterans Court and remand for fair proceedings. Thank both counsel for their arguments. The case is taken under submission.